UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONI FAITH SALOOM, § | |
| § | |
| Plaintiff, § | |
| vs. § | CIVIL ACTION NO. 4:13-cv-01002 |
| § | |
| TEXAS DEPARTMENT OF FAMILY AND § | |
| CHILD PROTECTIVE SERVICES, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court are the following motions: the defendants', Texas Department of Family and Protective Services ("TDFPS") and the 310th Judicial District Court of Harris County, Texas (the "Harris County 310th JDC"), motion to dismiss the plaintiff's original complaint (Dkt. No. 6); the defendant's, the 300th Judicial District Court of Brazoria County, Texas (the "Brazoria County 300th JDC"), motion to dismiss (Dkt. Nos. 22 & 26); the defendant's, City of Pearland, incorrectly named as the City of Pearland Police Department, motion to dismiss (Dkt. No. 28); the defendants', the Harris County Sheriff's Office, the Harris County District Attorney's Office, the Harris County Commissioner's Court County Judge, Ed Emmett ("Judge Ed Emmett") and The Children's Assessment Center of Harris County, motion to dismiss (Dkt No. 32); the defendants', the TDFPS, John J. Specia, Jr., Cheryl Lynn Haverick, Lesly Damian-Murray, and Karen Coblentz (collectively, the "TDFPS employees"), motion to dismiss the plaintiff's amended complaint (Dkt. No. 40), including responses thereto (Dkt. No. 58); the defendant's, Harris County Sheriff's Department Sergeant William Lilly ("Sergeant Lilly"), motion to dismiss (Dkt. No. 47), including responses thereto (Dkt. Nos. 49 & 58); the

defendant's, Pearland Police Department Officer Paul Elton ("Officer Elton"), motion to dismiss (Dkt. No. 48), including responses thereto (Dkt. No. 58); the defendants', TDFPS and the TDFPS employees, motion to strike the plaintiff's response (Dkt. No. 50) and related motion for joinder (Dkt. No. 52); the plaintiff's, Joni Faith Saloom (the "plaintiff"), motion to strike and preclude evidence (Dkt. No. 58), including responses thereto (Dkt. No. 61); and the plaintiff's, unopposed motion to dismiss previously named defendants (Dkt. No. 59). After having carefully considered the numerous motions, the pleadings on file and the applicable law, the Court determines that the plaintiff's motion to dismiss the Harris County 310th JDC, the Brazoria County 300th JDC, the Harris County DA's Office, the Harris County Children's Assessment Center, the Harris County Sheriff's Department, Judge Ed Emmett and Ms. Donna Everson is GRANTED (*See* Dkt. No. 59); likewise, these defendants' respective motions are DENIED as moot. Additionally, the defendants', the TDFPS and TDFPS employees, Sergeant Lilly and Officer Elton, motions to dismiss for lack of subject matter jurisdiction are GRANTED; these defendants' motions to dismiss on alternative grounds are hereby DENIED as moot.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2013, the plaintiff, a Brazoria County resident, initiated the instant action against the TDFPS, the Pearland Police Department, the Harris County Sheriff's Department, the Harris County 310th JDC, the Brazoria County 300th JDC, the Harris County DA's Office, Judge Ed Emmett, the Harris County Children's Assessment Center and Ms. Donna Everson Everson, a court-appointed guardian and attorney ad litem (collectively referred to as "the defendants"). The plaintiff alleges that the defendants conspired to fabricate false allegations against her in order to cause her custodial rights over her minor son, J.J.W., to be terminated,

thereby resulting in multiple violations of her civil rights. Specifically, she makes the following allegations against the defendants in her Original Complaint:

> On the evening of May 08, 2013, my only child, son, then aged five years old, J. J.W., was unlawfully and absent due process or protection of the laws seized from my physical custody and primary conservatorship as I then knew it to be by Court Order (See Suit Affecting Parent Child Relationship, 310th Judicial District Court, Harris County, TX Nov. 2007 and Final Order for Child Support in Harris County, TX Dec. 2012) absent exigent circumstance or threat of harm (either emotional or physical if child remained in my home) at the Pearland CPS Office located at 9407 Broadway, Pearland, TX 77584 in a conspiracy against rights with collusion and malicious and knowing intent to prosecute by Petitioner and vexatious litigant, child's father, Mr. Matthew James Worrell and paid agents, Ms. Cheryl Lynn Harvick, CPS supervisor, Brazoria County, TX, Officer Paul Elton, Badge # 106, Pearland Police Department, and Sergeant William Lilly, Harris County Sheriff's Office of Crimes Against Children Unit. On such date Sergeant Lilly also threatened me with a false felony conviction and failed to investigate allegations of a sexual nature made by my son with regard to an alleged "visitor" during his last (court-ordered) visitation at his father, Petitioner Matthew James Worrell's home. On such evening I was lured to the Pearland CPS office under the misguided assumption, planted by Ms. Harvick and Sgt. Lilly, that sexual misconduct had indeed taken place and that they needed my help to make an arrest. I showed up on-time to the appointment I called and made in response to Ms. Harvick's phone call on the evening of Monday, May 07, 2013, incidentally, after returning home from pre-registering my son for kindergarten the following semester, a day that has sadly come and gone in my absence. At such time, Ms. Harvick removed my son, J.J.W., from the room, angrily told me I would never see my son again because I would never call the Office of Consumer Affairs about one of her employees (referring to Brazoria County caseworker, Ms. Lesley Damian-Murray), again. Officer Elton (surrounded by three other large Pearland police officers and detectives), Badge # 105, angrily threw my valid TX driver's license at me and menacingly warned that I would never go "talking smack" about him at his precinct again (referring to the substation at 2555 Cullen Parkway, Pearland, TX 77581). Throughout the past ten plus months, I have been subjected to complete alienation and sequestration (all contact cut-off) from my only child, J. J.W.

(Pl.'s Compl., at 2 – 3; Dkt. No. 1).

She further contends that the defendants deprived her and her son of numerous guaranteed Constitutional rights, including "those in the Bill of Rights to the United States Constitution, to include the Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh

Amendment, Fourteenth Amendment, and possibly First and Second Amendments." (Dkt. No. 1 at p. 3). As a consequence, she seeks legal custody and/or conservatorship of her minor son, various parental rights, a permanent injunction limiting her son's biological father's rights, an unspecified amount of monetary damages and criminal "prosecution of any and all judicial/government workers and/or state actors or individuals to the fullest extent of the law." (*Id.* at p. 5).

Subsequent to the plaintiff's Complaint, several of the defendants moved for dismissal of the plaintiff's suit on various grounds, including a lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine, the *Younger* Abstention Doctrine and/or the domestic relations exception to federal jurisdiction, sovereign and qualified immunity and failure to state a claim under Fed. R. Civ. P. 12(b)(6). On July 1, 2013, in an apparent attempt to rectify the pleading deficiencies asserted by the defendants in their motions to dismiss, the plaintiff filed an eighty-three page First Amended Complaint abandoning her claims against all of the original defendants except the TDFPS and the Pearland Police Department, yet adding several others, including the TDFPS Commissioner, John J. Specia, Jr., TDFPS employees, Cheryl Lynn Haverick, Lesly Damian-Murray, and Karen Coblentz, Pearland Police Department Officer Paul Elton, Harris County Sheriff's Department Sergeant William Lilly and the City of Pearland (the "defendants").

In her Amended Complaint, she asserts, *inter alia*, the following allegations:

### DUE PROCESS CLAIMS

> Defendants (jointly and severally), who acted in both official and individual capacity clearly acted in conspiracy/collusion against Plaintiff and Child's rights as explained herein with Child's father, Mr. Matthew James Worrell, a/k/a. "Matt Worrell" (and his family), caused Plaintiff, Joni Faith Saloom and Child, J.J.W. of the genealogy Saloom, to be subjected to ***wrongful and unlawful (illegal) search and seizure*** at the same location and date ***without probable cause, reliability, and without due process of law*** (as demonstrative evidence, record, testimony, and circumstantial evidence will prove ***way***

> ***beyond a preponderance of evidence***, the standard burden of proof in this meritorious civil rights action at law.
>
> . . .
>
> **PLAINTIFF'S CIVIL RIGHTS CLAIMS**
>
> Defendants, who acted in their (respective) official and/or individual capacity under the color of law, jointly and/or severally, submitted material *implicit* and *explicit* false and fraudulent (sworn) hearsay testimony--both direct (oral) and indirect (affidavit), to two different courts at law against Plaintiff to maliciously and knowingly cause Plaintiff to suffer the loss of Plaintiff's Child with reckless indifference to the concurrent and foreseeable consequences of Child losing his mother, the only consistent parent in his life who did raise Child through the critical age of five and one-half years old.
>
> . . .

(Pl's First Amend. Compl. at 6, 60; Dkt. No. 38) (emphasis in original).  She appears to allege constitutional violations against the defendants pursuant to 42 U.S. C. §§ 1983 and 1985 and pursuant to the "First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution and Bill of Rights".  She also appears to allege claims for fraud, slander, libel and conspiracy against the defendants.  (*See* Dkt. No. 38).  While she no longer appears to seek injunctive relief from this Court, she, nevertheless, seeks an unspecified amount of damages which she estimates to be "significantly higher than $500,000 U.S.D. for [her] and [her] Child each."  (Dkt. No. 38-2 at 81).  All of the defendants, added by way of her First Amended Complaint, have moved for dismissal of her lawsuit on the same grounds set forth above by the original defendants.

### III.   STANDARDS OF REVIEW

#### A.  Standard Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions,*

*Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3rd Cir. 1992) (citing *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.") Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.") In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

### B.     Standard Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## IV. ANALYSIS AND DISCUSSION

### A. The *Rooker-Feldman* Doctrine

All defendants contend that the plaintiff's lawsuit is jurisdictionally barred by the *Rooker-Feldman* Doctrine, and, consequently, this Court lacks subject matter jurisdiction over the plaintiff's action. Since the *Rooker–Feldman* doctrine touches upon this Court's very ability to adjudicate the instant dispute, the Court considers it first. *See Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011).

Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Weaver v. Tex. Capital Bank N.A.,* 660 F.3d 900, 904 (5th Cir. 2011) (quoting *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994)). "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state court decision,' and the originality of the district court's jurisdiction precludes such a review." *United States v.*

*Shepard*, 23 F.3d 923, 924 (5th Cir. 1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482. 103 S .Ct. 1303 (1983)). Stated another way, "*Rooker-Feldman* prevents state-court litigants 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.' " *Hall v. Dixon,* No. H-09-2611, 2010 WL 3909515, at *37 (S.D. Tex. Sept. 30, 2010) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005 - 06, 114 S. Ct. 2647, 129 L. Ed.2d 775 (1994)). Further, the Fifth Circuit has long recognized that "[t]he casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation 'federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (citations and internal alterations omitted); *see also Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

In the case *sub judice*, the defendants argue that the plaintiff's case falls squarely within the *Rooker-Feldman* doctrine and thus, this Court lacks subject matter jurisdiction over it. They contend that the plaintiff has filed this lawsuit as a collateral attack on a state court judgment. In support of their position, the defendants point out that the plaintiff's Original Complaint sought "[t]he immediate return of [her] child . . . to her physical and legal custody/conservatorship with all her parental rights including sole managing, or, alternatively, primary managing conservatorship reinstated" and other demands regarding visitation rights, child support and other family law issues—a clear attack on the 310th Judicial District Court's custody order. (Dkt. No. 1 at 4 -5). They also contend that the very essence of the plaintiff's First Amended Complaint, although now cast under the guise of a civil rights action, is to remedy the harm allegedly imposed on her from the state court's custody order and essentially overturn the state

court's decision—yet another attack on the 310th Judicial District Court's custody order. They further argue that the plaintiff's *own* admissions contained within her First Amended Complaint coupled with the exhibits attached thereto indicate that the legal and factual contentions at the heart of the plaintiff's lawsuit are "inextricably intertwined" with the 310th Judicial District Court's custody order issued in the prior state-court proceedings. Finally, the defendants maintain that a finding in the plaintiff's favor would require this Court to "'reverse or modify a state court judgment' because it would compensate a party to the state court case by awarding damages against the other parties to the state case for losses inflicted by the state court's order by second-guessing the fact-finder's weighing of the evidence." (*See* Dkt. No. 48, ¶ 13 at 8.)

Because, here, it appears that the plaintiff seeks redress from a final, unfavorable state court judgment that allegedly has caused injury to her, the Court determines that it lacks jurisdiction to entertain her claims under the *Rooker-Feldman* doctrine. A review of the plaintiff's First Amended Complaint, though not a model of clarity, insinuates that the plaintiff's action, when dismantled to its core, is an attempt to collaterally attack the propriety of the state court's decision in her child custody dispute. In essence, the plaintiff is seeking a reversal of the Order, dated March 19, 2013, entered by the Harris County 310th Judicial District Court, under the guise of a civil rights action in federal district court. Despite her arguments to the contrary, her civil rights action is an attempt to bypass the *Rooker–Feldman* doctrine. Further her alleged federal constitutional violations are "inextricably intertwined" with the judgment issued by the Harris County 310th Judicial District Court, and therefore, her recourse is by appeal through the state court system. *See Liedtke*, 18 F.3d at 318; *Reedv. Terrell*, 759 F.2d 472, 473–74 (5th Cir. 1985). "Judicial errors committed in state courts are for correction in the state court systems . . .

." *Hale*, 786 F.2d at 691. Accordingly, the plaintiff's lawsuit must be DISMISSED because this Court lacks subject matter jurisdiction over it.

### B. The *Younger* Abstention Doctrine

In the alternative, to the extent that any custody issues remain pending in the state court, the defendants contend that the plaintiff's lawsuit is barred by the abstention doctrine of *Younger v. Harris*, 401 U.S. 31 (1971) (holding that a federal court must abstain from enjoining a state criminal proceeding). Under the rule specified by the Supreme Court in *Younger* and its progeny, federal district courts are instructed to refrain from entertaining demands for injunctive or declaratory relief premised upon constitutional challenges to state criminal and/or civil proceedings which are imminent at the time the federal suit is initiated. *Younger v. Harris,* 401 U.S. 37 (1971) (injunctive relief); *Samuels v. Mackell,* 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed.2d 688 (1971) (declaratory relief); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed.2d 116 (1982) (extending the abstention doctrine to cases seeking an injunction of state civil proceedings). The Fifth Circuit has determined that *Younger* and *Middlesex* compel a federal district court to abstain under the following circumstances: (1) the dispute "involve[s] an 'ongoing state judicial proceeding'"; (2) an important state interest in the subject of the proceeding is involved; and (3) the state proceedings afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996) (citing *Middlesex Cnty.*, 457 U.S. at 432)).

The defendants insist that if the state court custody dispute previously discussed remains ongoing and the state court's rulings are not final, thus satisfying the first prong under *Wightman*, the *Younger* abstention doctrine is applicable to this case and requires this Court to abstain from entertaining the plaintiff's suit. They argue that the second prong under *Wightman*

is also satisfied because this lawsuit involves family and child custody issues—both of which are important state interests. *See Moore v. Simms*, 442 U.S. 415, 434, 99 S. Ct. 2371, 60 L. Ed.2d 994 (1979) ("Family relations are a traditional area of state concern."); *see also Shipula v. Tex. Dep't. of Family Protective Servs.*, No. H-10-3688, 2011 WL 1882512, *9 (S.D. Tex. May 17, 2011) (citing *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir. 1981) ("[A]pplication of the *Younger* Abstention Doctrine to domestic relations cases is obvious and proper.")). Finally, the defendants contend that the third *Wightman* prong is satisfied in this lawsuit because based on the plaintiff's *own* admissions on file in this case, she has been afforded ample opportunity to litigate the issues presented in this case in the Texas state forum, as many of the very issues raised in this case were argued by her in the state-court proceedings. (*See* Dkt. Nos. 38-4, 38-5, 38-6, 38-7). Moreover, the defendants maintain that "Texas law is apparently as accommodating as the federal forum . . . . [A]bstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 425 – 26. Since Texas state law provides a sufficient avenue for the plaintiff to present her alleged constitutional violations, this Court would be compelled by *Younger*, to the extent that any custody issues remain pending in the state court, to abstain from hearing the plaintiff's suit.

## V.  CONCLUSION

When construing the plaintiff's allegations liberally, given her *pro se* status, the Court finds that her lawsuit, though filed under the guise of a civil rights action, is a collateral attack on a state court judgment and the constitutional issues asserted are "inextricably intertwined" with issues regarding the state-court judgment's validity. Therefore, the Court finds that the plaintiff's claims are barred by the *Rooker–Feldman* doctrine and it is without subject-matter

jurisdiction to hear them. In the event that the state-court's order relative to the plaintiff's custody dispute is not final, and is part of ongoing proceedings--no indication of which has been made apparent in this case, the Court finds the *Younger* Abstention Doctrine applicable to preclude the plaintiff's claims.

Furthermore, because the central issue in the plaintiff's lawsuit involves a domestic relations dispute over the custody of a minor child or is so entangled in the plaintiff's domestic relations controversy as to be within the bounds of the domestic relations exception to federal jurisdiction, this Court lacks jurisdiction to adjudicate the plaintiff's domestic relations controversy. *See Daniels v. Stovall*, 660 F. Supp. 301, 304 - 05 (S.D. Tex. 1987) (citing *Goins v. Goins*, 777 F.2d 1059, 1063 (5th Cir. 1983) ("the [p]laintiff's claims against certain [d]efendants are so enmeshed in her domestic relations controversy, which is properly within the province of the state court, that the exercise of the federal district court's jurisdiction would be improper.")). In any event, the plaintiff has chosen the wrong forum within which to seek legal redress. Accordingly, because this Court lacks subject matter jurisdiction over her lawsuit, the defendants' motions to dismiss the plaintiff's amended complaint for lack of subject matter jurisdiction are GRANTED. Because this Court's lack of subject matter jurisdiction is fatal to the plaintiff's lawsuit, the Court need not consider the defendant's other grounds for dismissal.

It is, therefore, ORDERED that this case be, and is hereby, DISMISSED for the reasons stated.

SIGNED on this 30th day of September, 2013.

_____
Kenneth M. Hoyt
United States District Judge